Guesnard vs. Executors of Bird.

## No. 8214.

AUGUSTE GUESNARD VS. EXECUTORS OF JOHN BIRD, OF MISSOURI.

Article 660, C. C., relating to the predial servitude of drain, is to be liberally construed in favor of the estate to which it is due. Previous Decisions affirmed. *Held* accordingly, that the owner of an estate whose waters flow by natural drain on the lands of his neighbor, has the right of cutting ditches or canals by which the waters may be concentrated and their flow increased beyond the slow natural process, by which they would ultimately reach the same destination.

Apparent predial servitude acquired by the prescription of ten years.

APPEAL from the Twenty-Third Judicial District Court, parish of West Baton Rouge.   *Cole, J.*

*Favrot & Lamon* for Plaintiff and Appellee:

First—The provisions of Art. 656 C. C., if interpreted to the letter, would, in effect, condemn to sterility the superior estate. Every man has a right to clear and cultivate his land ; he may make ditches, not for the purpose of making the water flow upon the adjacent land, but for the purpose of improving and cultivating his own, and making it healthy. He is not to do this, however, to the injury of his neighbor. 12 L. 503; 14 L. 163; 15 An. 300, 683 ; 16 An. 151 ; 6 An. 645 ; 7 An. 291.

Second—Continuous and apparent servitude may be acquired by title, or by possession of ten years. R. C. C. 765.

Third—A servitude can be extinguished by the erection of works incompatible with its exercise, only when made with the express permission, verbal or written, of the owner of the estate or creditor of the servitude. R. C. C. 765.

Fourth—When John A. Bird sold the Bellevale plantation to James L. Lobdell in 1858, if the apparent sign of service existed, and no mention was made of the same in the deed of sale, the service continued to exist as before the sale.  C. C. 765 ; 4 L. 312; 5 R. 16 ; C. C. 763, 764, 766.

Fifth—Plaintiff stands in the shoes of John A. Bird, the original owner of Belmont and Bellevale plantations.  Canals or cuts to drain his entire tract are servitudes, and, after selling the tract to different parties, his vendees cannot, by erecting levees, etc., interfere with such drains. 5 An. 590.

Sixth—The use which the owner establishes on one part of his property in favor of another is equivalent to a title as to perpetual and apparent servitudes, which may be acquired by title, and to establish which permanence of destination, and the caractère de perpétuité are essential requisites. 5 R. 16 ; 1 An. 407 ; 3 An. 166.

Seventh—The destination du père de famille, or disposition of the owner, is, in reality, a servitude equivalent to an alienation.  C. C. 645, 727, 763, 765 ; 12 An. 473.

Eighth—A sale of a servitude, separate from the place to which it is due, confers no title to the purchaser.  Being essentially due, from one estate to another, they remain the same as long as no change takes place in regard to the two estates, whatever change may take place in the owners. R. C. C. 652, 653.

Ninth—Prescription for non-usage does not take place against natural servitudes, which originate from the situation of the places.  C. C. 791 ; 1 R. 321.

*S. P. Greves* and *Barrow & Pope* for Defendants and Appellants:

First—In order to make out title by prescription, the plaintiff must prove that he held peacable, public, continuous, uninterrupted and unequivocal possession, a sufficient time and under a just title, with proof of exact commencement of that possession, which we

contend he has failed to do. 14 An. 511; 11 An. 78; 10 An. 327; C. C. Arts. 3486, 3487, paragraph 2, 3491.

Second—Plaintiff was estopped from showing title by destination by act of sale, when the same act of sale of Bellevale plantation, from Bird to Lobdell, contained a warranty against incumbrances on the place, and that the existence of the ditch on the place, on the day of sale, was not proven. 15 An. 140; 11 An. 489.

Third—The act of sale from Bird to Lobdell, of date 29th March, 1866, has no reference whatever to the servitude in question, and related to another ditch. Nor had this title been alleged in plaintiff's petition. He should not have been allowed to prove it. 15 An. 618; 24 An. 157.

Fourth—That the owner of Belmont plantation, during the year 1864, interrupted the course of prescription, if not acquired, and abandoned it, it acquired, by closing the ditch in controversy.

Fifth—By the sale of Belmont plantation to L. F. Generes, on the 4th April, 1867, with the ditch C D closed, the plantation lost said servitude by change of destination. 22 An. 117.

Sixth—Plaintiff has constantly increased and enlarged the ditches B E, B C and C D, which has aggravated the servitude and interrupted the course of prescription. 7 La. 54; 16 An. 275.

Seventh—The natural flow of water was not into Choctaw, but between the two bayous. Plaintiff has diverted the water from its course.

Eighth—Plaintiff's right to drain into Choctaw is limited, as stated in testimony of A. T. Bird.

Ninth—The nature and extent of the servitude of drainage is clearly defined by Art. 660 Revised Civil Code. The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome. 12 La. 504; 14 La. 161.

The opinion of the Court was delivered by

Poché, J. This case involves a right of servitude claimed by plaintiff.

He alleges that he owns a sugar plantation known as the "Belmont," situated on the right bank of the Mississippi River, in the parish of West Baton Rouge, adjacent to, and bounded on the upper line by, the defendants' plantation, known as the "Bellevale," from which it is separated by a lane running from the river front to forty arpents in the rear, or from north to south.

He avers that the natural flow of waters on the upper part of his plantation is from front to rear, to a certain point, and thence in a southwestern direction; and that for upwards of twenty-five years that portion of his plantation has been drained mainly by a ditch on the upper line of his place and running back to the forty arpent line, where it turns to the right or west, and crossing over defendants' lands, a distance of above seventy feet, empties into a stream known as "Little Bayou Choctaw," which takes its rise in the front upper part of his field, runs in a southwestern direction until it crosses over into defendants' Bellevale plantation, whereon it runs nearly due south, far beyond the point where it is intersected by the ditch described above;

That, through constant use by himself since 1869, and by his vendors before him, of the ditch connecting between his upper line leading ditch

and Choctaw Bayou, altogether for upwards of twenty-five years, he has acquired this right of drainage by prescription of ten years; but that, in the beginning of the year 1880 the defendants, through a tenant and an agent, by damming and otherwise obstructing the connecting ditch described above, have interfered with his acquired right of servitude, materially impeded the drainage of his lands in the southwestern portion of his plantation, which are thus rendered unfit for cultivation, and he prays for judgment enforcing his right of servitude as claimed, and for damages.

The defendants, through a curator *ad hoc*, filed a general denial, followed by a special denial of the servitude claimed by plaintiff. They aver that, by making and keeping open the ditch described by plaintiff and by diverting, through artificial means, the natural flow of waters from the southeastern portion of his plantation to the southwestern part, and emptying them into Bayou Choctaw over their lands, plaintiff has caused their lands on the southeastern part of the Bellevale to be overflowed and seriously damaged their crops for several years; and they pray for judgment abating the nuisance complained of, rejecting the right of servitude claimed by plaintiff, and for heavy damages.

The lower court recognized the right of drainage as claimed by plaintiff, ordered the removal by the sheriff of the obstructions placed in the connecting ditch on defendants' lands, and ignored all damages claimed by both parties.

The law applicable to this case having been frequently expounded in numerous decisions of the Supreme Court, the parties differ very little on this point.

Defendants, however, contend for a strict and rigid interpretation of article 660 of our Civil Code, which prohibits the use of the industry of man in causing the flow of waters from the upper to the lower estate.

On the other hand, plaintiff advocates a liberal construction of the article, as laid down by this Court in 12 L. 503; in 15 An. 300, 681.

Guided by these clear and learned decisions, we concur with plaintiff in the opinion that a rigid interpretation of that article would condemn to perpetual sterility all the rich lands in lower Louisiana bordering on the Mississippi River, and we hold that the article must not be construed so as to debar the owner of an estate, whose waters flow by natural drain on the lands of his neighbor, from the right of cutting ditches or canals by which the waters may be concentrated, and their flow increased beyond the slow natural process by which they would eventually reach the same destination.

Having reconciled this difference of construction between the par-

ties, who are in perfect accord on all other legal questions involved in the cause, and rely upon the same authorities and decisions, we have reduced the issue to a simple question of fact, which is embodied in the two following inquiries.

1.  Do the waters on the upper and rear portions of Belmont Plantation drain naturally in a southwestern direction, and towards the southeastern portion of Bellevale Plantation?

2.  Has plaintiff, through his own right and through the previous owners of Belmont Plantation, enjoyed, without legal interruption for more than ten years, the right of draining the waters of the upper portion of said plantation into Bayou Choctaw, by means of the upper line leading ditch of said plantation and the connecting ditch at the forty arpent line, where it intersects said bayou?

As might be naturally expected in a case like this, growing out of differences which have culminated in bad and angry feelings between near neighbors, the testimony is very voluminous and painfully conflicting, reflecting in a great measure the degree of sympathy felt for the contending parties by some of their respective witnesses.

Hence we have taken great pains in carefully weighing the testimony, in discovering the means and sources of knowledge of the various witnesses whose testimony is clashing or conflicting, and our conclusion after such an analysis is that the affirmative of both the above inquiries is established by the evidence.

It would be an idle waste of time, and a composition of matter of little interest or instruction to the student of jurisprudence, to reproduce in this opinion the analysis which we made of the testimony, and to parade the names or the statements of those witnesses who carried conviction to our minds, or to expose the names of those witnesses whose statements were contradictory, self-destructive, or not clad in the livery of truth.

Our conclusions on these questions of fact are strengthened by those of the district judge, who is of the vicinage, heard and saw the witnesses testify, knew their degree of intelligence, their reputation and standing, and was familiar with their means and sources of knowledge of the matters whereof they spoke; and who found, as we do, that plaintiff had made out his case on the matters of fact involved in this litigation.

We must state, however, that several witnesses are positive in deposing that they knew of the existence of the connecting ditch as far back as 1852, and others as far back as 1856, and that such statements are not necessarily contradicted by the statements of other witnesses, who say that they did not see such a ditch before 1858 or 1859.  In the analysis and construction of testimony, it is elementary that, all other

Guesnard vs. Executors of Bird.

things being equal, positive testimony on a given point must always predominate over negative testimony on the same point. But, be that as it may, all the witnesses who are in the least familiar with the grounds agree that the ditch in question exists and was used as drainage for the waters of Belmont since 1858, or the beginning of 1859.

But defendants contend, and the evidence shows, that the ditch was dammed up by the then owner of Belmont in the year 1864, and that this was an interruption of prescription in favor of the servitude, if not yet acquired, or a renunciation or abandonment of the right, if prescription had acquired. But the same evidence which shows the obstruction relied upon, proves at the same time that this act of the owner cannot be construed as an abandonment of that drainage, for it shows that the object of the owner in stopping up this ditch was to prevent the flow of waters from two crevasses from running into his field through that ditch. Any one familiar with the system of plantation drainage in Louisiana knows that the ditches and canals, which are not only essential but indispensable to the proper drainage of plantations under ordinary circumstances, have to be stopped up when waters from crevasses invade the plantations from the rear.

Defendants also complain that plaintiff, since his ownership of Belmont began, has aggravated the servitude, if it ever existed, by increasing the size of the ditch in question, as well as that of other ditches on his lands, which connect with said ditch, and has thus concentrated an unusual and unreasonable volume of waters, which must escape exclusively through the ditch in question; and these acts are held up by defendants as interrupting the prescription set up by plaintiff.

The evidence fails to sustain these complaints, or to show that plaintiff has done any act reprobated by law or in derogation of his vested rights.

We are satisfied from the evidence that the increase of the volume of water which runs from that point on the southeastern part of Bellevale Plantation is caused by the present condition of Bayou Choctaw, which is fast filling up by fallen trees and deposits, from want of proper attention and cleaning.

If the necessary works were done to that stream, its draining capacity would be restored to its former position, and no trouble would be felt by either Belmont or Bellevale.

Believing that justice was administered fairly and impartially by the district judge, we, therefore, affirm his judgment with costs.

Rehearing refused.