210 So.2d 161 (1968)
Casmier J. BLANDA
v.
Mr. and Mrs. J. B. RIVERS.
No. 3020.
Court of Appeal of Louisiana, Fourth Circuit.
May 6, 1968.
*162 Fred P. Westenberger, Edward F. Wegmann, New Orleans, for plaintiff-appellant.
Jacob H. Morrison, New Orleans, for defendants-appellees.
Before YARRUT, CHASEZ and BARNETTE, JJ.
BARNETTE, Judge.
Plaintiff Casmier J. Blanda is the owner of the property identified by municipal number 1015 Esplanade Avenue and the defendants Mr. and Mrs. J. B. Rivers own the adjoining property at 1011 Esplanade Avenue, in the City of New Orleans. Plaintiff brought this suit which he denominated "Petitory Action and/or Action in Trespass" in which he seeks principally a judgment ordering defendants to remove certain obstructions extending through the party wall and encroaching upon his property. The encroachments complained of are water, gas, and sewer pipes, and gas heater flues, all serving the apartments in defendants' building and mounted on the wall over plaintiff's property. From a judgment rejecting his demands plaintiff has appealed.
Defendants accept as accurate in every detail plaintiff's "statement of the case" which is as follows:
"This is an appeal from a judgment dismissing plaintiff's petition for petitory action and action in trespass. Plaintiff, by said action sought to have defendants remove from plaintiff's side of a party wall certain pipes and flues which the defendants had installed on plaintiff's side of said party wall and which extended into and over plaintiff's property. Defendants contended that said pipes constituted a continuous and apparent servitude acquired by means of prescription of over ten years under the provisions of RCC 765, and further that plaintiff is estopped from requesting their removal since plaintiff's immediate predecessor in title, a Mr. Landry [John G. Landry], was aware of the installation of said pipes and did not object thereto. The pipes are unsightly, do extend over plaintiff's *163 property, are difficult or impossible to conceal, cannot be `walled-up' due to the necessity of possible repairs and could have been installed on the defendants' side of the wall, but at much greater expense and inconvenience to the defendants. Plaintiff purchased said property with full knowledge of the existence of said pipes and flues and shortly thereafter instituted this suit. All pipes have been identified properly by means of photographs and a survey, identified in P-1 through P-13. The rear-most flue was installed by defendants in 1965; three of the pipes were attached to said wall prior to the defendants' purchase of this property; all remaining pipes, and the vast majority of all pipes on said wall, were installed by the defendants in 1950 or 1951."
The party wall forms a part of defendants' house and stands on the line between the two lots. It is 13 inches thick, 6 ½ inches resting on each lot. There is no building abutting the wall on plaintiff's side and the pipes in question protrude into the air space directly above his property over his yard or patio.
Plaintiff acquired his property by purchase from John G. Landry in January, 1966, with full knowledge of the unsightly pipes. It was not until negotiations between Landry and Blanda for the sale to Blanda that Landry became aware of his ownership of half the party wall. He had just assumed that his property extended to the wall until he was correctly informed by Mr. Blanda who made some complaint about the pipes protruding through the wall.
Landry acquired his property in 1941 and the defendants bought the adjoining property in 1943. In 1951 the defendants made alterations in the house at 1011 Esplanade to provide apartments for rent. This necessitated the installation of a considerable amount of plumbing. They obtained the permission of their neighbor Landry to install the pipes on Landry's side of the party wall and permission for access to Landry's yard for the placing of materials and equipment necessary for the project. There was no agreement in writing, nor was there an express verbal agreement for the granting of a "servitude." There was no discussion of their legal rights and, at least as far as Mr. Landry was concerned, there was no evidence that he had any other intent except to be a good neighbor and not to interfere with, nor object to, the Rivers' installation of the plumbing facilities. Whether or not Landry knew he owned 6 ½ inches of the party wall is not important because he did know that the pipes protruded over his property and that he gave his permission. The only objection or complaint he ever voiced was upon request of Blanda who had him make a demand, through an attorney, for the removal of the pipes on October 19, 1965. This was while the negotiation for sale from Landry to Blanda was in progress.
The only issue for our determination is whether defendants acquired a servitude in favor of their property by the prescription of ten years under LSA-C.C. art. 765 which provides in pertinent part as follows:
"Continuous and apparent servitudes may be acquired by title, or by a possession of ten years. * * *"
There can be no question whatever that the alleged servitude is "apparent," thus one of the requirements for acquisition by prescription is conceded. That it is "continuous" is not seriously disputed. The mere fact that water or gas does not flow through a pipe continuously, but only when a faucet or valve is opened by the act of man does not render the servitude discontinuous. The water or gas is continuously there ready for use and the sewer pipe, which also serves as a ventilator, is continuously open and ventilating sewer fumes. It is unnecessary to dwell longer on this point in the absence of serious contention. The servitude is both apparent and continuous and therefore subject to acquisition by prescription. Fuller v. Washington, 19 So.2d 730 (La.App.2d Cir. 1944).
*164 The plaintiff strenuously contends that there can be no acquisition of the servitude by prescription under LSA-C.C. art. 765 in the absence of "legal good faith" as distinguished from "moral good faith." He points to LSA-C.C. arts. 503 and 3451 for the definition of good faith. Article 503 provides:
"He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner." (Emphasis in the original.)
Article 3451 states:
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
The case of Randazzo v. Lucas, 106 So.2d 490 (La.App. Orleans 1958), relied on by plaintiff, is not relevant to the factual situation in this case. In the Randazzo case the defendants claimed a "servitude of boundary fence" (a kind of servitude unknown to the court) on the basis of ten years possession in good faith. Defendants' title called for 38 feet. A survey made for them showed the fence to be 2 feet on plaintiff's property, thus extending the lot to 40 feet in width. There was no evidence that the encroachment was with knowledge or permission of plaintiff. The court reasoned that since defendants knew their vendor could not convey to them more than 38 feet, by taking possession of the additional 2 feet knowingly without title, their possession was in "utmost bad faith." By way of contrast, in the instant case there was a recognition by Rivers of Landry's ownership of the property over which the pipes protruded, and he did not encroach upon Landry's property without first having obtained his consent.
The Supreme Court in Kennedy v. Succession of McCollam, 34 La.Ann. 568, 572-573 (1882), reaffirmed its position in two earlier cases, Vincent v. Michel, 7 La. 52 (1834); and Guesnard v. Executors of Bird, 33 La.Ann. 796 (1881), and said:
"The two decisions clearly constitute an unqualified affirmation of the right, even in the obsence of an apparent or just title in writing, to acquire such servitude by mere quiet and uninterrupted possession for ten years, by virtue of Art. 765, R.C.C." (Emphasis added.)
The Court further reaffirmed the use of oral testimony to establish the right.
The element of good faith is not mentioned in LSA-C.C. art. 765. Our jurisprudence holds that it is implied when read in connection with LSA-C.C. art. 3504, which is as follows:
"A continuous apparent servitude is acquired by possession and the enjoyment of the right for thirty years uninterruptedly, even without a title or good faith."
It should be noted that article 765 provides for acquisition by "title" or "by a possession of ten years." Obviously if one relies on "title," that alone establishes the right without necessity of possession for any required time. The use of the disjunctive conjunction "or" appears to have significance in that if the phrase "or by possession of ten years" is literally interpreted (without the implication of the element of good faith) there is a conflict with article 3504.
In Kennedy v. Succession of McCollam, supra, the Supreme Court said:
"There is no antagonism between the two Articles: that which refers to the prescription of ten years, relates to those cases in which good faith is required, the *165 other, which mentions the prescription of thirty years, concerns the cases in which no good faith is required and, therefore, applies to those where the possession is even characterized by bad faith." 34 La.Ann. at 574.
In a very comprehensive article entitled, "Acquisitive Prescription of Servitudes," 15 La.L.Rev. 777, 790 (1954-55), the writer said:
"The Louisiana jurisprudence reflects the existing difficulties in interpreting the articles 765 and 3504 of our Civil Code. The dearth of litigation under article 3504 and the attitude of counsel to rely on article 765 without alleging either good faith or title, together with the impression created by some of the language used in recent court decisions, can make us wonder whether article 3504 has not become to be considered superfluous by the legal profession."
He continues with a discussion of Kennedy v. Succession of McCollam, supra, referring to it as the leading case on the subject, and questions the relevancy of Guesnard v. Executors of Bird, supra, and points out that Vincent v. Michel, supra, fails to discuss the requirements for the prescription of ten years under article 765 except that of possession. The Court said in Vincent:
"In the present case, no written evidence of title is shown on the part of the appellee, by which he claims the servitude in question. His right of servitude rests solely on the acquiescence of the plaintiff in the burden imposed on his property, by suffering for ten years and upwards, without complaint, the drip from the defendant's house to fall on his lot." 7 La. at 55.
We must agree that without reading into article 765 the implication of the requirement of "good faith" with possession in the absence of title, it would be difficult, if not impossible, to reconcile article 765 with article 3504. The real problem arises, however, in determining the nature of this "good faith."
In the case before us plaintiff does not contend that Rivers did not first obtain Landry's consent before the installation of the pipes, nor that Landry's conduct thereafter for more than ten years evidenced anything contrary to his continued assent. To this extent, it is conceded that Rivers respected the property rights of his neighbor, however, plaintiff argues this falls short of the required "legal" good faith, which he contends is required in these situations.
LSA-C.C. art. 765, upon which defendants rely, is placed in the Code under Title IV "Of Predial Servitudes or Servitudes of Land." Real servitudes (as distinguished from personal) are defined in article 646 under this title as:
"Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate.
"They are called predial or landed servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personally." (Emphasis in the original.)
Article 647 provides:
"A real or predial servitude is a charge laid on an estate for the use and utility of another estate belonging to another owner."
LSA-C.C. art. 503, upon which plaintiff relies for a definition of legal good faith, is placed in the Code under Title II "Of Ownership." Article 488 under that title defines ownership:
"Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons."
Thus, a distinction is apparent that the ownership of the estate is one thing, and the charge laid on an estate in favor of another *166 estate is a quite different thing. Obviously, therefore the requirement of possession by an act sufficient in terms to transfer property in article 503 dealing with ownership of the estate, need not necessarily apply to the acquisition of a charge against the estate. LSA-C.C. arts. 3484, 3485, and 3486, defining "just title," relate to titles of ownership of property, which must be based on an instrument in writing. A servitude is not the subject of ownership apart from the ownership of the dominant estate. LSA-C.C. arts. 648, 652, and 654. Since it is at most a charge laid against an estate in favor of another estate, it is a right of different character from the right of ownership. This distinction appears to have been considered by the Supreme Court in holding that a real or predial servitude can be established by parole evidence. Therefore there is no logic in the argument that the possession required by article 765 should be preceded by an act translative of title, upon which legal good faith must always be predicated. Rather it appears that in the acquisition of servitudes only simple or moral good faith is necessary, without a "just title." Kennedy v. Succession of McCollam, supra; Vincent v. Michel, supra.
LSA-C.C. art. 3451, also relied on by plaintiff, which appears in the Code under Title XXIII "Of Occupancy, Possession and Prescription," Chapter 2 "Possession," relates to the possession of one who in good faith believes himself to be "the master of the thing which he possesses." We fail to see wherein this article adds anything to the contention made under article 503. Rivers never has made claim to anything more than the enjoyment of the right of use and utility flowing from the charge in favor of his estate and laid on the estate belonging to his neighbor.
Finally, plaintiff contends that at most Landry's failure to protect the installation of the pipes and his later assistance in repairing them was evidence of no more than permission granted Rivers to make the encroachment on his property. He cites LSA-C.C. arts. 3556(25) and 3490. Article 3556(25) provides:
"Precarious.That possession is called precarious, which one enjoys by the leave of another, and during his pleasure.
"The title which excludes the ownership, such as a lease, is also called precarious." (Emphasis in the original.)
Article 3490 is as follows:
"The circumstance of having been in possession by the permission or through the indulgence of another person, gives neither legal possession nor the right of prescribing.

"Thus, those who possess precariously, that is, by having prayed the master to let them have the possession, do not deprive him thereof, but, possessing by his consent, they possess for him." (Emphasis added.)
From these articles he argues that Rivers does not have the proper basis for acquisition of the servitude by prescription. We must reject this argument. At no time did Rivers possess or enjoy the right of servitude for or in the name of Landry, but always for the exclusive benefit of his estate. Article 3490 appears in section 2, "Of Prescription By Which The Ownership of Property is Acquired." In view of the distinction between ownership of property and predial servitudes the precariousness of title based upon permission referred to in this article applicable to ownership cannot by analogy be extended to predial servitudes. This question appears to have been firmly resolved by the Supreme Court in Kennedy v. Succession of McCollam, supra, citing with approval Vincent v. Michel, supra.
It is also true that the element of adverse possession is essential in the acquisition of ownership by prescription, whether it be ten or thirty years and must also be an element in the acquisition of a predial servitude. However the enjoyment *167 of the right in favor of Rivers' estate was no less adverse merely because Landry did not object.
At anytime before the expiration of ten years Landry could have protested and stopped the running of prescription, just as was done by the plaintiff Blanda with regard to the rear most flue installed in 1965.
Except for the last installation which was ordered removed by the trial court, and in which defendants concur, the Rivers' estate acquired the servitude claimed by possession and enjoyment of the right for more than ten years under the provisions of LSA-C.C. art. 765.
For these reasons the judgment appealed from is affirmed at appellant's cost.
Affirmed.