326 So.2d 856 (1976)
John R. NASH
v.
L. J. WHITTEN.
No. 56525.
Supreme Court of Louisiana.
January 19, 1976.
Rehearing Denied February 20, 1976.
*857 W. Charles Brown, Mansfield, for plaintiff-applicant.
Claude R. Sledge, Mansfield, for defendant-respondent.
MARCUS, Justice.
Plaintiff, the owner of a tract of land in De Soto Parish, filed suit against defendant, the owner of the estate that adjoins his to the west, seeking the removal from *858 his property of a natural gas pipeline that defendant owns and maintains. The pipeline, approximately 1,800 feet in length, connects a producing gas well located east of plaintiff's property with defendant's residence, which it serves and supplies with natural gas. The line is mostly aboveground and visible, and partly below the surface. It was stipulated at trial that the pipeline has been in place in excess of ten years and that it was originally laid on the property with the consent of one of plaintiff's ancestors in title. Defendant, however, admits that he had no written title authorizing the laying of the pipeline across plaintiff's land. His defense to the suit is that the pipeline in question constitutes a continuous and apparent servitude that he has acquired through ten years' possession. La.Civil Code art. 765 (1870). The trial court held that the gas pipeline was a continuous and apparent servitude, which defendant had acquired by possession of more than ten years. The court of appeal affirmed. 312 So.2d 679 (La.App.2d Cir. 1975). Noting possible conflict with Gilfoil v. Greenspon, 216 So.2d 829 (La.App.2d Cir. 1968), and Armstrong v. Red River, Atchafalaya & Bayou Bouef Levee Board, 261 So.2d 298 (La.App.3d Cir. 1972), aff'd, 278 So.2d 496 (La.1973), which stated that a natural gas pipeline constitutes a discontinuous servitude, we granted certiorari, upon plaintiff's application, to resolve any inconsistency in the jurisprudence. 317 So.2d 624 (La.1975). The issue presented is one of first impression in this court.
Predial servitudes are classified in the Civil Code as continuous or discontinuous, and as apparent or non-apparent. Articles 727 and 728, which are derived from articles 688 and 689 of the French Code civil, define these classifications as follows:
Art. 727:
Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like.
Art. 728:
Again, servitudes are either visible and apparent or non-apparent.
Apparent servitudes are such as are to be perceivable by exterior works; such as a door, a window, an aqueduct.
Non-apparent servitudes are such as have no exterior sign of their existence; such, for instance, as the prohibition of building on an estate, or of building above a particular height.
These classifications have practical significance. Servitudes that are both continuous and apparent can be acquired by prescription as well as by a title. La.Civil Code arts. 765, 3504 (1870). In contrast, continuous non-apparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title. La.Civil Code art. 766 (1870).
Plaintiff does not dispute the fact that the pipeline, which is perceivable by an exterior work, is apparent. He does contend, however, that the courts below erroneously held it to be continuous, i.e., that its use is, or may be, continual without the act of man. At trial, he called as a witness O. F. Woodfin, a retired gasoline wholesaler, who visited producing natural gas wells about 500 times and on these occasions had the opportunity to observe the operations at the well sites. He testified that constant pressure must be applied and maintained at the well site in order to transmit the natural gas through the pipeline. He further stated that the Hunter Oil Company, *859 which operates the producing gas well that serves defendant's pipeline, had recently been forced to install two new pumps because the pressure had become so low that gas was not being transmitted through the line. Mr. Woodfin was the only person testifying at trial who was knowledgeable regarding the operation of natural gas pipelines. Since defendant offered no evidence tending to countervail his testimony, we must regard it as established in this case that the transmission of gas through defendant's pipeline requires human activity in the form of the maintenance of adequate pressure.
The court of appeal rejected plaintiff's argument that this human activity at the well site constitutes an "act of man" rendering the servitude discontinuous. Because the examples of discontinuous servitudes given in article 727 happen to require that the owner of the dominant estate perform some act on the servient estate to use the servitude, the court reasoned inductively that a servitude is rendered discontinuous only when the owner of the dominant estate or his agent must physically come onto the servient estate in order to use the servitude. Since plaintiff offered no evidence that defendant or his agents performed any act on plaintiff's land to exercise the use of the servitude, the court concluded that the gas pipeline must be classified as continuous.
In determining whether a servitude is continuous or discontinuous, some earlier court of appeal decisions have similarly ignored human activity necessary for the exercise of the servitude that takes place off the servient estate. Acadia-Vermilion Rice Irrigating Co. v. Broussard, 175 So.2d 856 (La.App.3d Cir. 1965), noted in 40 Tul.L.Rev. 397 (1966), involved the classification of an irrigation canal as a continuous or discontinuous servitude. The owner of the servitude in Broussard conceded that it pumped water from the bayou into the main irrigation canal.[1] At the junction of the main canal and the lateral canal at issue in the case a gate was located. When the gate was opened water flowed from the main canal onto the lateral canal by means of gravity, and was then diverted to rice lands. After discussing the "act-of-man" test set forth in article 727, the Broussard court, employing reasoning similar to that used by the court below in the case at bar, held that a continuous servitude is one that "continues to be exercised after the owner of the dominant estate ceases to occupy or be on the servient estate." Consequently, the irrigation canal servitude was held to be continuous.[2]Broussard's interpretation of article 727 was restated in Wild v. LeBlanc, 191 So.2d 146 (La.App.3d Cir. 1966), critically noted in 28 La.L.Rev. 134 (1967). An earlier case, Fuller v. Washington, 19 So.2d 730 (La.App.2d Cir. 1944), held that a sewer line was a continuous servitude. Unlike the Broussard court, the Fuller court did not discuss the "act-of-man" test. Rather, the court likened the sewer line to aqueducts and drains, which are listed in article 727 as illustrative examples of continuous servitudes. Blanda v. Rivers, 210 So.2d 161 (La.App.4th Cir. 1968), held that water, gas, and sewer pipes, as well as gas heater flues, were continuous servitudes. Like the Fuller court, the court in Blanda did not mention the "act-of-man" test for classifying servitudes as continuous or discontinuous. Instead, it relied on the fact that the water or gas in the pipes was continuously "ready for use."
We are of the opinion that these aforesaid cases have formulated criteria for classifying servitudes as continuous or discontinuous *860 that depart from the test clearly set forth in the Civil Code. A predial servitude is defined as a charge laid on an estate for the use and utility of another estate belonging to another owner. La.Civil Code art. 647 (1870). Continuous servitudes are those whose use (by the dominant estate) is, or may be, continual without the act of man. Id. art. 727. If man's intervention is needed in order for the dominant estate to exercise the servitude, the servitude must be classified as discontinuous. Id. Employing this applicable legal test, can we say that the gas pipeline in this case constitutes a continuous servitude? We must conclude that it does not.
In reaching this conclusion, we have not considered the fact that the gas pipeline was laid by an act of man. A servitude is not rendered discontinuous because an act of man created the servitude. The servitudes of aqueduct, drain, and view, which are given as examples of continuous servitudes in article 727, may be established through man-made constructions. In classifying a servitude as continuous or discontinuous, the determinative factor is whether the use or exercise of the servitude is, or may be, continual without man's intervention. 4 T. Huc, Commentaire the orique et pratique du code civil, no. 409, at 503 (1893). As Planiol has stated:
[T]he exercise of the continuous servitude grows out of a factual state of affairs. It may be natural or artificial, but it is permanently established. And it may be said that, when once the premises have been arranged as contemplated, the servitude operates of itself, without the owner's intervention. The water flows in the aqueduct, the window lets in the light, etc.
1 M. Planiol, Traite elementaire de droit civil, no. 2894, at 703 (12 ed.La.State L.Inst.Transl. 1959). To the same effect see G. Marty et P. Raynaud, 2 Droit civil: les biens, no. 146, at 167 (1967). Accord, Roy v. Roy, 5 La.Ann. 590 (1850); Hale v. Hulin, 130 So.2d 519 (La.App.3d Cir. 1961).
Nor have we taken into account defendant's failure to show that gas has been transmitted unceasingly for a length of time in excess of the prescriptive period. For continuous servitudes need not actually be used without interruption; it suffices that their use may be continual without the act of man. Likewise, discontinuous servitudes are not defined as those that are used without interruption, but rather as those whose exercise needs an act of man. La.Civil Code art. 727 (1870). The servitude of the drain of rain water, for example, does not flow uninterruptedly, but only when it rains; yet it is a continuous servitude, since, when the water flows, it flows without human intervention. Planiol, supra, no. 2896; A. Weill, Droit civil: les biens, no. 631, at 520 (1970). Similarly, the servitude of drip is a continuous servitude, although in dry periods no use is made of it. 2 H.L. & J. Mazeaud, Lecons de droit civil, no. 1713 (4 ed. 1971). The test is therefore not uninterrupted activity, but the intervention or absence of intervention of man. Mazeaud, supra.
Finally, we have not been influenced by the existence of valves at the well site by which the flow of gas can be turned on or off. Acts of man by which the use of the servitude can be regulated do not render it discontinuous. For example, the flow of water in a servitude of aqueduct is often controlled through the use of sluices, or flood-gates. The servitude remains continuous, however, if the water, once the gate is raised, will flow by gravity without human intervention. See Cass. civ., Nov. 5, 1956, Gaz.Pal.1957.1.182; Cass. req., Nov. 23, 1898, D.1899.1.37; Cass. civ., Oct. 25, 1887, D.1888.1.106. The lifting of the gate is the removal of a man-made obstacle to the natural flow of the water, rather than an act of man necessary for the exercise of the servitude. 8 *861 F. Laurent, Principes de droit civil francais, no. 127, at 159 (4 ed. 1887).
What has led us to classify the gas pipeline as a discontinuous servitude is the fact that the gas can be transmitted through the pipeline only with the assistance of pumps at the well site. Just as the use by the dominant estate of a servitude of aqueduct or drain consist of the flow of water,[3] so the use of the servitude in this case consists of the transmission of natural gas through the pipeline. Without the man-operated pumps[4] that maintain adequate pressure, gas will not be transmitted through the pipeline, and no use can be made of the servitude. The gas pipeline servitude is consequently discontinuous, since it needs the act of man for its exercise.[5]
The conclusion that we have reached is dictated by the text of article 727. In addition, it is in accord with French jurisprudence, which, construing an article of the Code civil almost identical to our own (C. civ. art. 688), has consistently held that a servitude is discontinuous if an act of man, either on or off the servient estate, is needed for its exercise. See, e.g., Cass.req., Feb. 17, 1875, D.1876.1.504;S.1877.1.74; Aix-en-Provence, Jan. 28, 1969, Gaz.Pal.1969.1.somm. 24; Pau, Jan. 29, 1890, D.1891.2.132. See also Yiannopoulos, Predial Servitudes: General Principles; Louisiana and Comparative Law, 29 La.L.Rev. 1, 31-37 (1968); 28 La.L.Rev. 134 (1967); 40 Tul.L.Rev. 397 (1966). It is further supported by the views of a number of French commentators, including Aubry and Rau, Duranton, Laurent, and Planiol. 3 C. Aubry et C. Rau, Cours de droit civil francais,§ 248, at 119 n. 9 (5 ed. 1900); S.1838.2.347, note by M. Duranton; Laurent, supra, no. 132, at 165; Planiol, supra, nos.2895-96, at 703-04.[6]
Defendant nevertheless contends that we should interpret article 727 according to what he alleges is its spirit, and hold that human intervention, necessary for a servitude's use, that occurs off the servient estate will not affect its classification.
*862 Article 727, however, draws no distinction between human activity occurring on and off the servient estate. It defines discontinuous servitudes as "such as need the act of man to be exercised." It does not define discontinuous servitudes as those that need the act of man to be exercised on the servient estate. The article's meaning is entirely free from any ambiguity. We are free to consider the spirit of the law only "when its expressions are dubious." La. Civil Code art. 18 (1870). On the other hand, when a law is clear and free from all ambiguity, as is article 727, its letter is not to be disregarded, under the pretext of pursuing its spirit. Id. art. 13.
Accordingly, we hold that acts of man that are necessary for a servitude's exercise after its establishment, whether those acts occur on the servient estate or elsewhere, render such a servitude discontinuous and incapable of being acquired by prescription. Because defendant's gas pipeline constitutes a discontinuous servitude, the courts below erred in holding that he had acquired it by prescription. Plaintiff is entitled to the removal of this encumbrance upon his property, as prayed for in his petition.

DECREE
For the reasons assigned, the judgments of the trial court and the court of appeal are reversed, at defendant's cost; and it is hereby ordered that defendant remove the gas pipeline at his expense.
TATE, J., dissents and assigns written reasons.
DENNIS, J., recused because of participation in decision of the case below.
TATE, Justice (dissenting).
We order the defendant Whitten to remove a natural gas pipeline which has served his home for some twenty-odd years. It lies partially above the surface of the land and was apparent to the defendant Nash when he bought his property, across which the pipeline crosses.
We do so because our scholarly majority opinion characterizes the servitude as "discontinuous", for essentially semantical reasons. We thus adopt an interpretation of Civil Code Article 727 which, founded on semantical and non-functional reasons, overrules an equally permissible interpretation favored by our Louisiana scholars and which has previously been adopted by our Louisiana courts and which has much more desirable practical consequences.
Endangered by this decision are many types of servitudes previously recognized as continuous, such as the irrigation servitudes (at least formerly so essential to the cultivation of rice). See, e.g., Acadia-Vermilion Rice Irrigating Co. v. Broussard, 175 So.2d 856 (La.App.3d Cir. 1965). The Louisiana interpretation of the code article, although favored by only a minority of the French commentators as to the equivalent French article, is preferable for our New World conditions and is equally permissible by legal reasoning. We should not depart from it for dictionary reasons, disregarding the functional values at issue.
It is conceded that the pipeline is "apparent", above the ground in part.[1]
The legal issue is whether the servitude is "continuous" or "discontinuous". Civil Code Article 727. If "continuous", the servitude may be acquired by prescription. Civil Code Articles 765, 3504. If discontinuous, it can be acquired only by a title. Civil Code Article 766.
This issue hinges upon an interpretation of the requirement that a continuous servitude is one "whose use is or may be continual *863 without the act of man." Civil Code Article 727. To understand what functionally is there meant, however, it is necessary to examine the code article in whole, having in mind that the chief practical distinction between a continuous and discontinuous apparent servitude is that the former may be created and acquired by prescription, while the latter may be acquired only by a title, usually a writing.
Civil Code Article 727 provides:
"Servitudes are either continuous or discontinuous.
"Continuous servitudes are those whose use is or may be continual without the act of man.
"Such are aqueducts, drain, view and the like.
"Discontinuous servitudes are such as need the act of man to be exercised.
"Such are the rights of passage, of drawing water, pasture and the like."
The semantical issue is whether the pipeline which transported natural gas across the defendant Whitten's land without any "act of man" upon Whitten's land, is nevertheless discontinuous becauseat the well-site, off the premisesan act of man was needed to start and keep the natural gas flowing.
If one looks at the code-article examples of continuous servitudes" aqueducts, drain, view", at least the first two of these, I submit, are of the same nature as the present servitude. An act of man off the premises may activate the flow of water; but, insofar as the servient estate across which the water flows, no act of man occurs on that estate.
If one looks at the example of discontinuous servitudes given in the code article"rights of passage, of drawing water, pasture",[2] then, I submit, the examples are of servitudes where the owner of the apparent servitude must also do some act on the servient estate so as to evidence its use.
The reason for using an act of man test to distinguish between a continuous and a discontinuous apparent servitude makes sense if we understand its functional purpose in permitting or prohibiting acquisition of title by prescription.
A masterful and comprehensive statement of the Louisiana law of predial servitudes is contained in Professor Yiannopoulos' article, "Predial Servitudes; General Principles: Louisiana and Comparative Law", 29 La.L.Rev. 1 (1968). His analyses of the principles applicable to continuous and discontinuous servitudes is contained at 29 La.L.Rev. 31-41.
Having in mind that prescriptive acquisition applies only to apparent servitudes (and only if they are continuous), the scholar notes that "discontinuous servitudes confer on the owner of the dominant estate the right to do certain material acts on the servient estate" 29 La.L.Rev. 36. On the other hand, "continuous servitudes involve the maintenance of a certain state of affairs [on the servient estate] which is beneficial for the dominant estate", as contrasted with "discontinuous servitudes [which] require for their use of preservation successive acts of man", 29 La.L.Rev. 32.
Professor Yiannopoulos suggests that the uniform Louisiana view that an apparent servitude is continuous even though requiring off-premise human activitythat is for the servitude to be discontinuous the "successive acts of man" must take place on the servient premisesis a preferable interpretation because of its more sound practical results, even though only a minority of French commentators favor it. 29 La.L.Rev. 33.
*864 From the point of view of prescriptive acquisition of an apparent servitude, those who own or acquire a servient estate are fully on notice of a type of servitude usage of his property which by its nature involves a permanent service of his estate to the other (dominant) estate. This sort of permanent usage is to be contrasted with a type of usage which depends on the dominant owner coming onto his (servient) estate to do some act at different times of the day, season, or yeara discontinuous relationship, not as readily observable as a fixed relationship between the two estates.
In Louisiana, such obvious (apparent) permanent relationships of one estate to another have, since our earliest days, been permitted to be established by prescription, rather than by requiring a title in every case. This probably should be understood as a natural development of a New World frontier-sort of society, relatively lawyerless. Without going to the courthouse town and finding a lawyer (if there), two neighbors could establish by agreement a use of one estate for the permanent benefit of another estate; and long-established usage, with mutual consent, was sufficient to create the servitude.[3]
A similar discussion of the French views and of the Louisiana, decisions on the issue is contained at Note, 40 Tul.L.Rev. 397 (1966). The writer likewise concludes, based in part on the reasons of the minority French view and in part on the practical consequences, that the prior Louisiana view is preferable:
"The language of article 727 does not clearly demand either the interpretation of the French courts or the Louisiana-Demolombe view. It is submitted that the Louisiana court adopted the preferable interpretation. First, Louisiana courts which apply the Broussard interpretation of the act-of-man test of article 727 should nearly always reach a result consistent with the examples given in article 727; thus article 727 is rendered more internally consistent than under the French view. Second, in confining the scope of the test of continuity to acts occurring on the estate, the Broussard holding is more consistent with the usual justification for limiting the acquisition of servitudes by prescription, that is, only usage which is adverse to the interests of the owner of the servient estate should vest rights by acquisitive prescription; to look beyond the acts occurring on the servient estate in deciding whether the servitude is adverse seems pointless."
I might not as strongly dissent if the majority offered some functional or practical view why, at this late date, we should reject the Louisiana interpretation of Article 727 which has worked so well for Louisiana conditions. After all, the majority view is a respectable interpretation adopted (for French conditions) by a majority of French commentators.
However, the Louisiana interpretation is equally respectable and equally available. To discard it for dictionary reasons, without weighing the functional or practical values, seems to me (to exaggerate, for the moment) an abdication of the judicial function in favor of blind application of "rules" without regard to their purpose or reason.
For these reasons, therefore, I respectfully dissent.
NOTES
[1] It should be noted that the facts as set forth in the opinion do not reveal whether or not this pumping operation was regularly necessary to maintain the flow of water into the lateral canal.
[2] The court of appeal in Broussard reversed and remanded the case to the trial court. The court of appeal thereafter, on a second appeal, 185 So.2d 908 (La.App.3d Cir. 1966), reversed the trial court's granting of a motion for summary judgment and remanded.
[3] Laurent, supra, no. 127.
[4] The term "act of man" comprehends his operation of machines necessary for the servitude's exercise. Cf. Mazeaud, supra, no. 1713.
[5] We believe that the gas pipeline is similar in character to the flow of water from a quarry or mine, which Planiol gives as an example of a discontinuous servitude:

[T]he flow of water from a quarry or mine, whose discharge pipe works day and night, and all the year without interruption is a discontinuous servitude. It is so classed because its exercise requires man's intervention. If the engineer in charge did not operate his machine, the water would cease flowing. The flow of water may thus be continual or very infrequent, without this circumstance having any bearing upon the continuous or discontinuous nature of the servitude. This nature depends exclusively upon man's abstention in the exercise of the servitude. It is just as Cepolla said in the XV century: `Licet non exerceatur semper, tamen semper apta est exerceri sine facto hominis.'
Planiol, supra, no. 2896. See also Cass.civ., Oct. 8, 1957, Gaz.Pal. 1957.2.324;Mazeaud, supra, no. 1713.
[6] For example, although the servitude of drain is listed as an example of a continuous servitude in both the French and Louisiana Civil Codes, French jurisprudence has classified the servitude of the drain of household or industrial water as a discontinuous servitude, since its exercise requires the deposit of water into the pipes (off the servient estate) by an act of man. Aubry and Rau commented approvingly on this jurisprudence as follows:

The existence of works destined to transmit to the neighboring estate household or industrial water, such as a sink with descending pipes, does not impress the servitude with which we are concerned with the characteristic of continuity. It is true that once placed in the sink, the water will flow without the further act of man; but since this flowing transmits to the servient estate only the waters placed in the sink by the proprietor of the dominant estate, we are truly obliged to recognize that the servitude will be exercised only by acts succeeding the last, and that consequently it is discontinuous.
Aubry et Rau, supra, § 248, at 119 n. 9 (emphasis in original).
[1] If it were buried beneath the ground and thus "non-apparent", see Yiannopoulos, cited in text at 29 La.L.Rev. 41, thenas with disccontinuous servitudes it could only be acquired by a title, not by mere possession. Civil Code Article 766.
[2] See Civil Code Article 726: "Pasturage is the right of grazing one's cattle on the estate of another.
[3] In fact, to facilitate acquisition of such servitudes, the articles in the servitudes portion of our Louisiana civil codes pertaining to acquisition by prescriptive possession shortened the prescriptive period from thirty years in 1808, to ten years if present and twenty if absent in 1825, to ten years in 1870. See Art. 765, La.C.C.Comp.Ed. in 16 West's LSA-C.C. pp. 459-60 (1972).