460 So.2d 705 (1984)
Huey P. BERTRAND, Plaintiff-Appellee,
v.
John Henry HALLEY, et ux., Defendant-Appellant.
No. 83-1071.
Court of Appeal of Louisiana, Third Circuit.
December 12, 1984.
*706 Nathan A. Cormie, Lake Charles, for defendant-appellant.
McHale, Bufkin & Dees, Louis D. Bufkin, Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and KNOLL, JJ.
KNOLL, Judge.
This appeal concerns a predial servitude. John Halley and his wife, Ruby Halley, (hereafter Halleys) appeal a declaratory judgment in favor of Huey P. Bertrand (hereafter Bertrand) decreeing the existence of a predial servitude for the use of a water well on the Halleys' property. The Halleys assign as error the following: (1) whether Everett Doland, the common ancestor in title of the Halleys and Bertrand, established a real or personal servitude; (2) if a real servitude was created, does the use of a water well constitute a continuous apparent servitude capable of acquisition by destination of the owner; and (3) if the trial court improvidently granted Bertrand a temporary restraining order restricting Halley's interference with Bertrand's exercise of the predial servitude, is Halley entitled to attorney's fees? The issue raised by these assignments is whether the servitude is both continuous and apparent. We reverse, finding that Bertrand's use of the water well was a discontinuous servitude that required the act of man, therefore, incapable of acquisition by destination of the owner.

FACTS
The facts are undisputed. The Halleys and Bertrand are owners of adjoining tracts of land. Their common ancestor in title, Everett Doland, owned both tracts at issue as one parcel of land from 1962 to 1976. During Doland's common ownership, a water well located on the tract now owned by the Halleys was used to transport water by underground pipe to Doland's home situated on the tract now owned by Bertrand. The water well is located on the Halleys' tract, ten feet from the Bertrand tract, and consists of an electric pump motor and holding tank enclosed in a small aboveground structure.
An electric motor is necessary to draw water from the well. The electricity required to generate the motor is supplied by electrical utility lines that run from the Bertrand tract to the water well on the Halleys' tract. The deeds to Bertrand and the Halleys, and their ancestors in title, do not mention the use of the water well. Each acquired title to their respective tracts free from any encumbrances.

*707 NATURE OF THE SERVITUDE
The Halleys contend the trial court erred in holding that Bertrand acquired a predial servitude for the use of a water well when Doland sold the tract to the Stanleys, Bertrand's immediate ancestor in title. The Halleys assert that if Bertrand's ancestors in title acquired any rights to use the water well, these rights were personal to Bertrand's ancestor in title and did not enure to the benefit of the Bertrand tract.
All parties agree that the alleged predial servitude should be determined by the codal articles of the Louisiana Civil Code of 1870, not the amended servitude articles which became effective January 1, 1978. We agree. The new codal articles do not have a retroactive effect; accordingly our treatment of the servitude in question will be governed by the applicable articles of the Civil Code of 1870. See Norton v. Thorne, 446 So.2d 972 (La.App. 3rd Cir. 1984.)
Under LSA-C.C. Art. 646 of the Louisiana Civil Code of 1870, there are two kinds of servitudes, personal and real, which are defined as follows:

* * * * * *
"Personal servitudes are those attached to the person for whose benefit they are established, and terminate with his life. This kind of servitude is of three sorts: usufruct, use and habitation.
Real servitudes, which are also called predial or landed servitudes, are those which the owner of an estate enjoys on a neighboring estate for the benefit of his own estate.
They are called predial or landed servitudes, because, being established for the benefit of an estate, they are rather due to the estate than to the owner personally." (Emphasis added.)

* * * * * *
The Halleys rely upon LSA-C.C. Art. 757 in asserting that the use of the water well was for "mere personal convenience." Article 757 provides:
"If, on the other hand, the concession from its nature is a matter of mere personal convenience, it is considered personal, and can not be made real but by express declaration of the parties.
Thus for example, if the owner of a house near a garden or park, should stipulate for the right of walking and gathering fruits and flowers therein, this right would be considered personal to the individual, and not a servitude in favor of the house or its owner.
But the right becomes real and is a predial servitude, if the person stipulating for the servitude, acquires it as owner of the house, and for himself, his heirs and assigns."
We disagree with the Halleys reliance upon Article 757. We find the use of the water well served as a "real advantage" to the Bertrand tract, which is the import of LSA-C.C. Art. 756, which provides as follows:
"If the right granted be of a nature to assure a real advantage to an estate, it is to be presumed that such right is a real servitude, although it may not be so styled.
Thus, for example, if the owner of a house contiguous to lands bordering on the high road, should stipulate for the right of passing through lands,* without it being expressed that the passage is for the use of his house, it would be not the less a real servitude, for it is evident that the passage is of real utility to the house." (Asterik explanation omitted.)
The presumption is that such right is a real servitude. Moreover, the evidence clearly establishes the "real advantage" to the Bertrand tract when Doland began using the well after the pump on the well behind his home malfunctioned. Therefore, it is clear that the presumption of a real servitude existed.
In 1976 Doland sold to the Stanleys what is now the Bertrand tract. Doland allowed the Stanleys the continued use of the water well provided they paid the monthly electric bill for generating the water, until they either dug their own well or Doland sold the land on which the water well is situated. When Bertrand purchased the tract *708 from the Stanleys, Doland allowed Bertrand to continue drawing water from the well. He had the same understanding with Bertrand that he had with the Stanleys concerning the electric bill. Further, Doland had the electric company transfer the water well's electric meter from his name to Bertrand's. However, Doland never informed Bertrand that the use of the water well could terminate.
Accordingly, we find the trial court did not err in classifying the use of the water well as a real servitude.

CONTINUITY OF THE SERVITUDE
The Halleys concede that the water well was apparent. They contend, however, that the water well constituted a discontinuous servitude incapable of acquisition by destination of the owner.
LSA-C.C. Art. 767 provides as follows:
"The destination made by the owner is equivalent to title with respect to continuous apparent servitudes.
By destination is meant the relation established between two immovables by the owner of both, which would constitute a servitude if the two immovables belonged to two different owners."
LSA-C.C. Art. 727 differentiates continuous from discontinuous servitudes as follows:
"Servitudes are either continuous or discontinuous.
Continuous servitudes are those whose use is or may be continual without the act of man.
Such are aqueducts, drain, view and the like.
Discontinuous servitudes are such as need the act of man to be exercised.
Such are the rights of passage, of drawing water, pasture and the like."
The creation of a predial servitude by destination made by the owner is never presumed until it has been proved that both estates, now divided, have belonged to the same owner, and that it was by him that the things have been placed in the situation from which the servitudes result. LSA-C.C. Art. 768. If the owner of two estates, between which there exists an apparent sign of servitude, sells one of those estates, and if the deed is silent respecting the servitude, the servitude shall continue to exist in favor of or upon the estate which has been sold. LSA-C.C. Art. 769.
In reaching its decision the learned trial judge relied on Fuller v. Washington, 19 So.2d 730 (La.App. 2nd Cir.1944), Acadia-Vermilion Rice Irrigating Co. v. Broussard, 175 So.2d 856 (La.App. 3rd Cir. 1965) and Blanda v. Rivers, 210 So.2d 161 (La.App. 4th Cir.1968). The Louisiana Supreme Court noted that these cases presented a conflict in our jurisprudence, therefore, it granted certiorari in Nash v. Whitten, 326 So.2d 856 (La.1976) to resolve any inconsistency in the jurisprudence. In Nash, supra, the Supreme Court stated:
"We are of the opinion that these aforesaid cases have formulated criteria for classifying servitudes as continuous or discontinuous that depart from the test clearly set forth in the Civil Code. A predial servitude is defined as a charge laid on an estate for the use and utility of another estate belonging to another owner. La. Civil Code art. 647 (1870). Continuous servitudes are those whose use (by the dominant estate), is, or may be, continual without the act of man. Id. art. 727. If man's intervention is needed in order for the dominant estate to exercise the servitude, the servitude must be classified as discontinuous.

* * * * * *
What has led us to classify the gas pipeline as a discontinuous servitude is the fact that the gas can be transmitted through the pipeline only with the assistance of pumps at the well site. Just as the use by the dominant estate of a servitude of aqueduct or drain consist of the flow of water,3 so the use of the servitude in this case consists of the transmission of natural gas through the pipeline. Without the man-operated pumps4 that maintain adequate pressure, *709 gas will not be transmitted through the pipeline, and no use can be made of the servitude. The gas pipeline servitude is consequently discontinuous, since it needs the act of man for its exercise.5"(Footnotes omitted.) (Emphasis added.)
From the standard set forth in Nash, supra, we conclude that the water well in the instant case does not constitute a continuous servitude.
Bertrand's use of the water well is dependent on successive instances of man's intervention. The water could only be transmitted to the pipeline with the aid of a pump at the well. We note that this activity is similar to "drawing water" which is exemplified in Article 727 as a discontinuous servitude. Accordingly, we find that the trial court erred in its determination that Bertrand acquired a predial servitude by destination of the owner.

ATTORNEY'S FEES
Since we have found that Bertrand is not entitled to a predial servitude, the Halleys seek attorney's fees under LSA-C.C.P. Art. 3608 for the wrongful issuance of the temporary restraining order and the preliminary injunction.
After Bertrand sought a temporary restraining order, the Halleys filed a reconventional demand praying for the dissolution of the restraining order. Initially, we note that by joint stipulation between the parties, the trial court signed a judgment dated May 13, 1982, formally dismissing the reconventional demand to dissolve the temporary restraining order and for damages and attorney's fees. Accordingly, the issue of attorney's fees is not properly before this court.
For the foregoing reasons, the judgment of the trial court is reversed, and the petition for declaratory relief filed by Huey P. Bertrand against John Henry Halley and Ruby Halley is dismissed with prejudice. Costs of this appeal are assessed against the plaintiff-appellee, Huey P. Bertrand.
REVERSED AND RENDERED.
GUIDRY, J., concurs in the result.