bDECUIR, Judge.
Vicky and Harvey Comby appeal a judgment of the trial court dismissing their claim for damages associated with the relocation of a water line. For the reasons that follow, we reverse.
FACTS
Between May 27, 1974 and September 5, 1975, Cygnal White, Sr. and his wife, Mary, acquired certain real estate adjacent to the Toledo Bend Reservoir in Sabine Parish, Louisiana. All of the property is located in Section 16, Township 6 North, Range 13 West and was acquired under one or more of three deeds. A portion of the property was subdivided as part of Whispering Pines subdivision. The balance of the property comprises that portion of the Southwest % of the Southwest ^ of the Southwest % of Section 16 not expropriated by the State of Louisiana for the Toledo Bend Reservoir (hereinafter unexpropriated portion). All of this property is contiguous and composed of one piece of land which is comprised of the | p.unexpropriated portion together with Lots 25-33 and Lot 199 in the Whispering Pines Subdivision.
The "White, Srs. had a residence constructed partly on Lot 199 and partly on the unexpropriated portion. In conjunction with that construction, a water line, electric line, and cable television line were connected to the residence. These lines originate on Lot 30 of Whispering Pines Subdivision and run across the subdivision property and part of the unexpropriated portion and terminate at the residence.
The public records reveal that the White, Srs. subsequently divested themselves of all of the property in three separate transactions to: 1) Edwin Pousson and his wife, 2) Harvey and Vicky Comby, and 3) Cygnal White, Jr. and his wife. The Combys purchased Lot 199 of Whispering Pines Subdivision and the unex-propriated portion less the property conveyed to Pousson. White, Jr. obtained Lots 25 through 33 and a thirty-foot alley in Whispering Pines. The transfer to White, Jr. took place some seven years prior to the Combys’ purchase but was not recorded until a day after the Combys’ purchase. After the recordation of the transfer to White, Jr., on April 21, 1995, the public records reflect that the White, Srs. had transferred all of their interest in the property. The water meter located on Lot 30 was originally in the name of White, Sr. but, after the Combys’ purchase, it was transferred to the Combys’ name.
The water line at issue in this case traverses the driveway of Cygnal White, Jr. and his wife Deloris. Continued use of the dirt driveway eventually resulted in a breakage of the line on or about May 18, 1996. The White, Jrs.’ granddaughter turned off the water at the meter and notified the Combys of the break. Vicky Comby called a repairman, Lynn Wooley, who inspected the site and contacted Deloris White and was informed that Mr. White, Jr. did not want the driveway dug up. As this was | ¡¡necessary to facilitate the repair, Wooley contacted the Combys. Vicky Comby then contacted Deloris White who restated her husband’s position that they did not want the yard dug up for utility lines. Mr. White, Jr. was in Arizona visiting his mother, so Vicky Comby located the number for Mrs. White, Sr. and attempted to contact Mr. White, Jr., to discuss his position. She was unsuccessful.
Subsequently, the Combys purchased another piece of property and relocated the entire water line on their property. To repair the line in its original location would have cost less than $200.00. Relocating the line increased its length from approximately 200 feet to over 1200 feet and required larger pipe and a new meter. The total cost of relocating the water line came to $4,672.26, excluding the cost of the additional property which the Combys do not seek to recover.
*96 On October 7, 1996, the Combys filed this suit to have their servitude recognized and to recover the cost of building the water line. Trial was held on May 27, 1998, and on June 2, 1998 the trial court issued a letter opinion finding that an apparent servitude existed in favor of the Combys and requesting briefs on damages from both parties. The trial court entered judgment on July 14, 1998 dismissing the Combys’ claims at their costs. The Com-bys lodged this appeal alleging that the trial court erred in declaring that they had abandoned their servitude and in finding that they were unreasonable in their actions to remedy their water problems.
EXISTENCE OF SERVITUDE
La.Civ.Code art. 707 declares, “ [pjredial servitudes are either apparent or nonap-parent. Apparent servitudes are those that are perceivable by exterior signs, works or constructions; such as a roadway, a window in a common wall, or an aqueduct.” There are three methods of obtaining an apparent servitude: 1) by title; |42) by destination of the owner, or 3) by acquisitive prescription. La.Civ.Code art. 740. La.Civ.Code art. 741 provides:
Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to the different owners.
When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance record of the parish in which the immovable is located a formal declaration establishing the destination.
In this case the trial court found that an apparent servitude existed in favor of the Combys. We agree. In Fuller v. Washington, 19 So.2d 730 (La.App. 2 Cir. 1944), the court found that a sewer line running across property constituted an apparent servitude. In Nash v. Whitten, 326 So.2d 856 (La.1976), the supreme court discussed Fuller and similar cases, finding that the courts had improperly applied the test to determine whether a servitude was “continuous” or “discontinuous.” The “apparent” nature of the servitude was not disputed by the court. The Louisiana Civil Code of 1870 art. 767 required that for title by destination of owner a servitude be “continuous” and “apparent.” Bertrand, v. Halley, 460 So.2d 705 (La.App. 3 Cir.1984). As we noted previously, current Louisiana Civil Code art. 741 requires only that the servitude be “apparent.” Accordingly, we find that the water, electric and cable lines in this case constitute an apparent servitude. The property at issue in this case was originally owned in its entirety by Cygnal White, Sr. and his wife, and the lines would have constituted a predial servitude had the property been owned by separate parties. Consequently, when the White, Srs.’ property ceased to belong to them alone a servitude was created by destination of owner. Because the servitude in | .¡question was apparent it came into existence of right for the benefit of the Combys. The trial court was correct in finding that an apparent servitude exists.
EXTINGUISHMENT OF SERVITUDE
We turn now to the Combys’ contention that the trial court erred in declaring that they had abandoned the servitude created. We interpret the trial court’s ruling that the servitude was “abandoned” to be a finding that the servitude was extinguished. A predial servitude is extinguished by the destruction of the dominant or servient estate, confusion, abandonment of the sepvient estate, express written renunciation by the owner of the dominant estate, or by nonuse. La.Civ.Code arts. 751, 765, 770, 771, and 753. Only extin-guishment by nonuse is applicable in this case.
La.Civ.Code art. 753 states, “A predial servitude is extinguished by nonuse for ten *97 years.” The trial court’s reasons for judgment suggest that it declared the servitude abandoned because the Combys relocated the water line. This finding is overly broad and premature. It is overly broad because it declares the servitude abandoned because the water line has been moved and fails to consider the electric and cable lines which also traverse the property. Moreover, even if relocating the water line could extinguish the servitude, sufficient time has not passed. The ten year prescription of nonuse commences with the last use of the servitude. La. Civ. Code art. 754. In this case, the earliest date that could be argued would be the date the water line was broken. •
Accordingly, the trial court erred in finding that the Combys had abandoned the servitude. The servitude has not been extinguished by any method provided by law.
DAMAGES
Finally, the Combys contend that the trial court erred in failing to award damages to compensate them for the cost of relocating the water line. We agree.
|fiLa.Civ.Code arts. 744 and 745 grant the owner of the dominant estate the right to enter the servient estate to construct or repair works necessary for the use of the servitude. Moreover, La. Civ. Code art. 748 prohibits the owner of the servient estate from interfering with the use of the servitude. Interference with the use and enjoyment of a servitude by the owner of the servient estate entitles the owner of the dominant estate to damages. Clause v. Broussard, 146 So.2d 828 (La.App. 3 Cir.1962), unit refused, 243 La. 1004, 149 So.2d 763 (1963); see also Vicknair v. Perrilloux, 7 Pelt. 281 No. 8887 (La.App. Orleans 1923).
In the present case, the White, Jrs. allowed their driveway to deteriorate to such an extent that the Combys’ water line was uncovered, and then continued to drive over it until it broke. They then refused to allow the Combys to repair the line due to concern about digging up their eroded driveway.
The Combys had a right to enter the property and make repairs at their expense. La.Civ.Code arts. 744, 745. The White, Jrs. declined to grant access. The Combys’ alternatives were to forcibly enter the property or seek legal remedies. The first alternative presented a risk of escalating the dispute. The latter involved substantial time delay as evidenced by this litigation, which is into its third year.
La.Civ.Code art.2002 requires that a party make reasonable efforts to mitigate his damages. Failure to do so can result in a reduction in his damages. Id. The Combys installed a new water line and meter at a cost of $4,672.26. By doing so, they limited the time they were denied use of their property to 95 days. Had they not done so, they faced the loss of the use of their property for the nearly 800 days this litigation has been ongoing.
The trial judge concluded that the Com-bys did not make sufficient effort to explain the nature of the repair to the White, Jrs. and declined to award damages 17because the Combys did not properly mitigate damages. We find both conclusions erroneous. The Combys had no obligation to cajole the White, Jrs. into honoring their obligation as owners of the servient estate. Likewise, after careful review, we conclude that construction of the water line was necessary to mitigate the damages accruing daily for the Com-bys’ loss of the use of their property. At any reasonable rate, the Combys’ damages for loss of use of their property would have far exceeded the cost of the new water line.
Accordingly, we find the Combys are entitled to $4,672.26 for the cost of the new water line less $150.00 for the cost of repairing the old line or $4,522.26. In addition, we find the Combys are entitled to $2,500.00 in damages for the time they were without water on their property.
*98 DECREE
For the foregoing reasons, the judgment of the trial court is reversed.
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that judgment be entered in favor of the plaintiffs-appellants, Vicky Comby and Harvey Comby, and against Cygnal "White, Jr. and Deloris Whittington White as follows:
1) recognizing an apparent servitude for water, utility and cable lines on the property of Cygnal White, Jr. and Deloris Whittington White;
2) awarding $4,522.26 together with legal interest from date of demand for the costs of installing a new water line; and
3) awarding $2,500.00 together with legal interest from date of demand for loss of the use of their property while without water.
All costs are assessed against defendant-appellees, Cygnal White Jr. and Deloris Whittington White.
REVERSED AND RENDERED.