# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT
# CA 18-571

**PHILLIP EDWARD CARPENTER**

**VERSUS**

**GUILLORY INVESTMENT, INC.**

**\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
14TH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, No. 2017-1480
HONORABLE ROBERT L. WYATT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\***

**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\***

Court composed of Billy Howard Ezell, Van H. Kyzar, and Jonathan W. Perry, Judges.

**AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.**

**Kyzar, J., dissents and assigns written reasons.**

**Barry A. Roach**
**Larry A. Roach, Inc.**
**2917 Ryan St.**
**Lake Charles, LA**
**COUNSEL FOR DEFENDANT/APPELLANT:**
Guillory Investments, Inc.

**Marcus Myers**
**Myers Law Firm LLC**
**2917 Ryan St.**
**Lake Charles, LA**
**CO-COUNSEL FOR DEFENDANT/APPELLANT:**
Guillory Investments, Inc.

**Brian Arabie**
**Arabie Law Firm LLC**
**1011 Lakeshore Dr.**
**Suite 200**
**Lake Charles, LA**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
Phillip Carpenter

**PERRY, Judge.**

This case focuses on a predial servitude created by destination of the owner and involves a residential water line. We affirm but remand to allow the trial court to amend the judgment in accordance with this opinion.

## FACTS

Phillip E. Carpenter and Susan R. Carpenter ("Carpenters") own residential rental property at 703 Murbelle Road ("Murbelle property") in Calcasieu Parish. They acquired this property in September of 2013 from Moffett Realty. Guillory Investments, Inc. ("Guillory Investments") owns a much larger eighteen-acre tract (the "Common Street" property) to the north and adjoining the Murbelle property.[1] Two water meters are located on the northwest corner of the Common Street property—meter number 07101188 and meter number13801239.[2]

On direct testimony, Gerald Lee Guillory ("Guillory"), an officer of Guillory Investments, explained that at one time "Mr. Cole" owned the Common Street property and the Murbelle property as one estate.[3] Later, the record does not show

---

[1] The record is replete with hearsay testimony, none of which either party lodged an objection. The facts that follow regarding the ownership of the two properties, the common chain of title, the information about the water meters, the payment history of the parties, the history of exactly when or how the water service to the properties came to be—none of these are supported by documentary evidence. However, neither party has disputed these facts. All sorts of evidence, including oral testimony, may be used to prove the creation of servitudes by destination of the owner. *See Rozier v. Maginnis,* 12 La.Ann. 108 (1857) overruled on other grounds in *Buras Ice Factory, Inc.,* 103 So.2d 74 (La. 1958); *see also* Yiannopoulos and Scalise, 4 La. Civ. L. Treatise, *Predial Servitudes* § 6:42 (4th ed. September 2018 Update). When inadmissible hearsay evidence is admitted without objection it may be considered and given the substantive weight to which it is entitled. *Gray v. Great Am. Indem. Co.*, 121 So.2d 381 (La.App. 1 Cir. 1960); *Bourque v. Bouillion*, 95-909 (La.App. 3 Cir. 10/18/95), 663 So.2d 491.

[2] The evidence also shows the presence of a third water meter on the Common Street property. It appears to provide water to another tract of Guillory Investments' property located adjacent to and further north of the Common Street property. The third meter is not involved in this litigation.

[3] Guillory testified that he learned these facts from Alex, his barber. As noted above, *see* note 1, *supra*, no documentary evidence was entered to show when this common owner purchased the two tracts or when the city of Lake Charles first provided metered water service to these

exactly when, Mr. Cole put a water line to the residence at 703 Murbelle where family member lived; that water line is serviced by meter number 13801239 on the Common Street property. Guillory further testified that at the time of Mr. Cole's death, the Murbelle property remained connected to one of the Common Street meters.

The Carpenters' property at 703 Murbelle receives its water supply from the city of Lake Charles through water meter number 13801239, located at the northwestern corner of Guillory Investment's Common Street property. At the time of their purchase, the Carpenters formally transferred the billing on this water meter with the Lake Charles Water Department ("Water Department") into their personal names. Their water line runs approximately 1,100 feet from the meter parallel to the northern boundary of the Common Street property and across the width of that property to the Carpenters' rental house on Murbelle. From the time of their purchase of the property the Carpenters have paid a water bill to the city of Lake Charles for the minimum usage every month based on the water meter registered to 703 Murbelle.

Notwithstanding the existence of this water meter, in early 2014 the Carpenters, when remodeling the Murbelle residence, learned from an employee of the Water Department that the Murbelle property's water supply had been re-connected to another water meter, number 07101188, just south of the Murbelle property water meter; that meter was registered to Guillory Investments. When confronted with this fact, Guillory Investments informed the Carpenters that prior to the Carpenters' purchase of the Murbelle property, the city had disconnected water

properties. As noted above, Guillory Investments provided this testimony and did not contest the facts associated with that evidence.

service to their water meter. At that time, Guillory Investments disconnected the line for the Murbelle property water meter, located north of its meter, and connected it to its meter, when it learned that the water line connected to the Murbelle meter also supplied water to cattle and chickens located on Guillory Investments' property. Guillory Investments explained its actions by stating that when the water service to this other water meter was disconnected, the animals on the Common Street property became water-deprived.

On two occasions after the Carpenters' purchase, one on July 4, 2016 and again on March 27, 2017, the continuous flow of water to the Murbelle property was interrupted; the former for approximately one day and the latter precipitated the Carpenters' lawsuit against Guillory Investments because the water to the Murbelle property remained disconnected.

## PROCEDURAL HISTORY

On April 1, 2017, the Carpenters filed suit against Guillory Investments, seeking a preliminary injunction, a permanent injunction, and declaratory judgment.[4] After conducting a hearing on April 21, 2017, the trial court granted the preliminary injunction and ordered Guillory Investments to immediately restore the water service to the 703 Murbelle Road property, burdening Guillory Investments' Common

---

[4] Although the Carpenters have not made this an issue, our review of the record shows that Guillory Investments did not file any pleading specifically designated as an answer to the Carpenters' petition. However, the record does reflect two memoranda that Guillory Investments filed in opposition to the Carpenters' petition. "While compliance with the requirements of the Code of Civil Procedure is highly indicative that a document is an answer, it is not necessarily decisive." *Citadel Builders, L.L.C. v. Dirt Worx of La.*, *L.L.C.*, 14-495 (La.App. 5 Cir. 11/25/14), 165 So.3d 117, 122, *writ granted, reversed on other grounds*, 14-2700 (La. 5/1/15), 165 So.3d 908. In determining whether a pleading constitutes an answer, "a court should consider, based on the totality of the circumstances surrounding the pleading, whether the substance of the document . . . is an answer." *Id.* at 121-22. Guillory Investments' first memorandum sets forth its opposition to the issuance of a TRO and injunction; its second memorandum asserts that the water line is nonapparent and not subject to acquisitive acquisition or susceptible to acquisition by destination of the common owner. Under the totality of the circumstances and mindful of the focus on the substance of the pleadings, we find Guillory Investments' memoranda, which respond to and oppose the Carpenters' allegations, achieve the substantive purpose of an answer.

Street property. The trial court further ordered the Carpenters to pay Guillory Investments $40.00 per month for the water provided.

On June 15, 2017, the trial court conducted a hearing on the Carpenters' request for a permanent injunction. After hearing testimony from Phillip Carpenter and Guillory, the trial court, relying upon *Wagner v. Fairway Villas Condominium Associates*, 01-0734 (La.App. 3 Cir. 3/13/02), 813 So.2d 512, found that the common predecessor in title of these two estates created a predial servitude, that by virtue of the presence of the water meter on the Common Street property this servitude was apparent under La.Civ.Code art. 741, that the common owner never disavowed the existence of this predial servitude, and thus, Guillory Investments' Common Street property was burdened with a water utility service servitude in favor of the Murbelle property. Accordingly, the trial court granted the permanent injunction, enjoining Guillory Investments from "further interruption of the water service to the Murbelle Property."

Guillory Investments appeals, contending the trial court erred when it: (1) misapplied *Wagner*, finding there was a predial servitude in favor of the Carpenters; and (2) found a predial servitude in favor of the Carpenters when the former common owner of the Guillory Investments and Murbelle properties had not filed a "formal declaration establishing the destination" sufficient to establish the servitude as required in La.Civ.Code art. 741.

**STANDARD OF REVIEW**

Appellate courts "review judgments regarding servitudes under the manifest error standard of review." *Allen v. Cotton*, 11-1354, p. 3 (La.App. 3 Cir. 5/2/12), 93 So.3d 681, 683. More particularly, whether an apparent servitude has been created by destination of the owner is a factual determination reviewed under the manifest

4

error-clearly wrong standard of review. *Naramore v. Aikman*, 17-1621, 17-1622 (La.App. 1 Cir. 6/4/18), 252 So.3d 935. "An appellate court may not set aside a trial court's findings of fact unless they are manifestly erroneous or clearly wrong." *Allen*, 93 So.3d at 683. "To reverse under the manifest error rule, an appellate court must find from the record that there is no reasonable basis for the trial court's finding and that the record shows the finding to be manifestly erroneous." *Id.*

## PREDIAL SERVITUDES

Guillory Investments contends the trial court erred and advances a threefold argument: the water lines were not visible; the water meter was not near the common boundary of the two properties; and neither the current owner of the Common Street property nor the Murbelle property knew at the time of their respective purchases that the Common Street meter supplied water to the Murbelle property. For reasons that follow, we find no merit to Guillory Investment's argument.

A predial servitude is either apparent or nonapparent. La.Civ.Code art. 707. An apparent servitude is "perceivable by exterior signs, works, or constructions; such as a roadway, a window in a common wall, or an aqueduct." *Id.* Nonapparent servitudes have "no exterior signs of their existence; such as the prohibition of building on an estate or of building above a particular height." *Id.* Apparent servitudes are acquired by "title, destination of the owner, or by acquisitive prescription." La.Civ.Code art. 740. Nonapparent servitudes can only be acquired by title, "including a declaration of destination under Article 741." La.Civ.Code art. 739. Whether a servitude is classified as apparent or nonapparent is dependent on the facts and circumstances of each case. *Wagner*, 813 So.2d at 512.

Louisiana Civil Code Article 741 describes "destination of the owner":

5

> Destination of the owner is a relationship established between two estates owned by the same owner that would be a predial servitude if the estates belonged to different owners.
>
> When the two estates cease to belong to the same owner, unless there is express provision to the contrary, an apparent servitude comes into existence of right and a nonapparent servitude comes into existence if the owner has previously filed for registry in the conveyance records of the parish in which the immovable is located a formal declaration establishing the destination.

This codal article recognizes that when there is only one owner, there is no servitude because no one can have a servitude on his own property. *See* Yiannopoulos and Scalise, 4 La. Civ. L. Treatise, *Predial Servitudes* § 6:38 (4th ed. September 2018 Update). "But, when the single estate is divided, or two estates cease to belong to the same owner, an apparent servitude comes into existence of right unless the common owner disavows its existence." *Naramore*, 252 So.3d at 940.

Thus, there is a two-fold requirement for the creation of a predial servitude by destination of the owner: (1) there must be a relationship between two estates or two parts of the same estate belong to the same owner that would be an apparent servitude if there were two different owners; and (2) the ownership of one of the estate or of a part of an estate must be transferred by an act that does not negate, by express provision, the creation of a servitude by destination of the owner.

In the present case, the trial court found that an apparent servitude existed in favor of the Murbelle property. Expressly relying on this court's earlier decision in *Wagner*, 813 So.2d 512, the trial court concluded, "While the water lines, alone, are nonapparent, the water meter constitutes a perceivable exterior sign, work, or construction that makes it apparent there are water lines running underneath the surface." Thus, applying the provisions of La.Civ.Code art. 741, the trial court found a predial servitude came into existence by destination of the former common

owner of the two estates. Finding the trial court was not manifestly erroneous, we agree.

It cannot be denied that the water line in question was buried and not visible. It can also not be denied that the water meter that services the Murbelle property is located on the Common Street property, approximately 1,100 feet from the Murbelle property, and is visible. Nevertheless, Guillory testified that at the time of Guillory Investments' purchase, the realtor pointed out the two water meters located at the northwestern corner of the Common property and purportedly told him the meters were his. Notwithstanding Guillory Investments' assertion of water meter ownership, the uncontroverted evidence shows that the Carpenters have received a water bill associated with the Murbelle property coinciding with their 2013 purchase and continuing thereafter. Phillip Carpenter's testimony is likewise uncontroverted that the Water Department records dating back to 2004 show two separate meters on the Common Street property – one to Guillory Investments and a separate one to the Murbelle property. Additionally, when the trial court asked Guillory for any evidence that would have shown that Guillory Investments paid for the monthly water bill for the Murbelle property water meter, Guillory had nothing to present to the court.

We find it inconsequential that Guillory Investments had no particularized knowledge that the water meter on its property serviced the water line connected to the Murbelle property. Under the provisions of La.Civ.Code art. 741, the current servient estate owner's knowledge is immaterial. Rather, the focal point clearly rests with the actions of the former common estate owner, Mr. Cole.

Although the trial court may have relied upon dicta in *Wagner* relating to the presence of the water meter to support its resolution of this matter, we find *Comby*

*v. White*, 98-1437 (La.App. 3 Cir. 3/3/99), 737 So.2d 94, more supportive of the question now before us.  That case, like the present one, involved prior common owners who installed a water meter and constructed a water line which ran across subdivision property to a residence.  Later, the common owners divested themselves of all the property, divvying it up among various individuals, effectively leaving the water meter on property other than the residence it serviced.

As shown in *Comby*, Cygnal White, Jr. and his wife owned the property on which the water meter was located; Harvey and Vicky Comby owned the property serviced by the water line that commenced at the water meter on the Whites' property.  When the water line broke under the Whites' driveway, they denied access to the Combys to repair the broken water line. Instead, the Combys were forced to run a much longer water line at a tremendous cost. Contending that their estate was favored with a predial servitude over the Whites' estate, the Combys sued the Whites for the added expense they incurred.

On the facts presented in *Comby*, including the presence of the water meter on the servient estate, the trial court found a predial servitude existed and awarded damages for the added expenses the Combys incurred.  Commenting on the application of La.Civ.Code art. 741 to those facts and the trial court's determination that the water line constituted an apparent servitude, this court stated:

> The property at issue in this case was originally owned in its entirety by Cygnal White, Sr. and his wife, and the lines would have constituted a predial servitude had the property been owned by separate parties. Consequently, when the White, Srs.' property ceased to belong to them alone a servitude was created by destination of owner. Because the servitude in question was apparent it came into existence of right for the benefit of the Combys. The trial court was correct in finding that an apparent servitude exists.

*Comby*, 737 So.2d at 96.

The same is true in the present case. The water meter constituted an exterior sign characteristic of the water service servitude that made it apparent there were water lines running underneath the surface. Guillory Investments' argument that the water meter is located approximately 1,100 feet from the Murbelle property is likewise not a determinative factor of apparency that was critical under La.Civ.Code art. 741. Although under the present facts the length of the water line evidences the extent of the servitude, it is the visible presence of the water meter, an exterior sign characteristic of the water service servitude, that is paramount to the resolution of the issue before the trial court and us as a reviewing court. Guillory not only testified that he saw the multiple water meters at the time of his purchase,[5] but he further testified that the Murbelle property remained connected to the water meter dedicated to service that property at the time of Mr. Cole's death. Therefore, we find the trial court did not err when it found Guillory Investments' property was burdened with a predial servitude in favor of the Carpenters' Murbelle property.

Having affirmed the trial court's determination that this water line constituted an apparent predial servitude, we pretermit Guillory Investments' second assignment of error. Under the provisions of La.Civ.Code art. 741, there was no need for the registry of a formal declaration by the prior common owner, establishing the destination in the conveyance records.

However, we observe that a predial servitude is "[a] charge on a servient estate for the benefit of a dominant estate." La.Civ.Code art. 646. It "is inseparable from the dominant estate and passes with it." La.Civ.Code art. 650. Additionally, "[t]he

---

[5] We reference this statement simply because it underscores the extrinsic manifestation of the servitude. Although the duty of Guillory to investigate the presence of the second water meter is immaterial to the question now before us, such a duty would have been implicated in another aspect. Under La.Civ.Code art. 2500 a seller does not warrant against the lack of knowledge of encumbrances such as "apparent servitudes and natural and legal nonapparent servitudes, which need not be declared."

right of using the servitude cannot be alienated, leased, or encumbered separately from the dominant estate," and the servitude "continues as a charge on the servient estate when ownership changes." *Id*. Because predial servitudes are charges on estates, it is necessary for the judgment to specifically delineate by property description the servient and dominant estates. *See, e.g.*, *Sustainable Forests, L.L.C. v. Harrison*, 37,152 (La.App. 2 Cir. 5/22/03), 846 So.2d 1283 (recognizing the importance of describing both the servient and dominant estates in the public records). Accordingly, we find it necessary to remand this matter for the trial court to conduct a hearing in which the parties may introduce the property descriptions of the dominant and servient estates because those property descriptions are not part of this record.[6] After allowing the introduction of this evidence, the trial court shall amend its judgment to particularly describe the servient and dominant estates.

For the foregoing reasons, the judgment of the trial court is affirmed and the case is remanded to the trial court to amend the judgment consistent with this opinion. Costs are assessed to Guillory Investments, Inc.

**AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.**

---

[6] Although the record shows that the trial court's judgment on the temporary restraining order delineates property descriptions, out of an abundance of caution and for the integrity of future title examination, we find it more prudent to remand this matter to the trial court for the proper introduction of the property descriptions into the record.

10

# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT
# 18-571

## *PHILLIP EDWARD CARPENTER*
## *VERSUS*
## *GUILLORY INVESTMENT, INC.*

**\*\*\*\*\*\*\*\*\*\***

**KYZAR, J.,** dissents and assigns reasons.

I respectfully disagree with the majority opinion. Based on the scant record from the trial of this case, I find that the trial court erred in its finding that the servitude in question was an apparent servitude, subject to acquisition by destination of owner as per the provisions of La.Civ.Code art. 740. It was the plaintiff's burden to show by the facts presented that the servitude for the hidden, underground waterlines servicing the Carpenter property over 300 yards away from the Guillory property was an apparent servitude. He did not, based on a review of this record. The only testimony in the record is that of Mr. Carpenter and of Mr. Guillory. Mr. Carpenter testified that when he purchased his property, the Murbelle Property, through a foreclosure sale, he was told by his realtor that the water supplied to the property was supplied through the City of Lake Charles. He had a meter installed and paid a flat monthly water bill each month and assumed the meter he had connected sourced his water lines.

Mr. Guillory testified that when he purchased his property, the Common Property, he had two meters for the lines supplying water to the overall property. One meter was on lines supplying part of the property and the other supplying a horse barn towards the rear of the property. At one point, the city disconnected the meter supplying the horse barn, nearly causing the death of the livestock as it was not noticed that water had been disconnect for approximately two weeks. At the time, unbeknownst to Mr. Guillory, disconnecting that meter also disconnected water to the Murbelle property. Mr. Guillory reconnected the lines supplying the rear horse barn to his other meter, such that he only had one bill for the joint lines, thus also reconnecting water to the Murbelle property owned by Mr. Carpenter as well.

While there was much discussion about the existence of water meters, particularly the two on Mr. Guillory's property, it is clear that at least at one time both were actively metering water supplied to the Guillory property. Thus, it was inherently reasonable for him to believe they were metering only lines under his property, not someone else's property more than 1100 feet away and on another street altogether. Indeed, the only testimony at trial that directly dealt with this came from Mr. Guillory himself.

Q Is there anything - - is there anything that told you, prior to buying the property or after buying the property, that there was a piece of pipe going under your land that supplied the property on Murbelle Road?

A No, sir.

The question before the trial court and this court is rather simple, while the resolution thereof is problematic for both property owners. Was the water line running beneath Mr. Guillory's property supplying water to the Carpenter's Murbelle Property an apparent servitude, or a non-apparent servitude? La.Civ.Code art. 707. If it is an apparent servitude, Mr. Guillory's property is burdened therewith as the servient estate. La.Civ.Code art. 740. If it is a non-apparent servitude, it was not properly recorded as such in the public records by the previous common owner, such that Mr. Guillory's estate is not burdened with any servitude. La.Civ.Code art. 741.

The trial court and the majority of this court find that the mere existence of a water meter is a sufficient work or visible sign to make the hidden water lines supplying water to the Murbelle Property some 1100 feet away and on another street an apparent servitude. The majority concludes that it is "inconsequential that Guillory Investments had no particularized knowledge that the water meter on its property serviced the water line connected to the Murbelle property" ... and that "[U]nder the provisions of La.Civ.Code art. 741, the current servient estate owner's knowledge is immaterial." Rather, the majority asserts that "the focal point clearly rests with the actions of the former common estate owner, Mr. Cole." I disagree wholeheartedly. The focus is on one important factor and one only: Was there some work or visible sign to make Mr. Guillory or anyone else in his position at the time he purchased the Common Property aware that there were buried water lines under the property supplying water to another property owner? The answer to that question is of extreme import to anyone in this state that acquires property henceforth. If there is a visible work or sign, a non-apparent servitude, one hidden from sight, becomes apparent, and runs with the servient estate, without more, for the very reason that it is obvious. If it is not such as to alert one to the hidden servitude, it remains non-apparent and does not burden the property and owner of the servient estate unless the common owner declared such in the public record. The majority, like the trial court, found that the mere existence of a water meter unquestionably metering a water line supplying water to Mr. Guillory's own property, is a sufficient visible work or sign. Under the bare facts presented in this case, I find that it was not.

The majority relies on two decisions by this court in determining that the water lines running under the Guillory Common Property supplying water to the Carpenter's Murbelle Property, constitute an apparent servitude. The first, also relied upon by the trial court is *Wagner v. Fairway Villas Condo. Assocs.*, 01-0734 (La.App. 3 Cir. 3/13/02), 813 So.2d 512. The other is *Comby v. White*, 98-1437 (La.App. 3 Cir. 3/3/99), 737 So.2d 94, which the majority concludes is more supportive of the question now before us than *Wagner*. I disagree, finding that neither are dispositive of the issue.

In *Comby*, Cygnal White, Sr. and his wife acquired certain real estate adjacent to the Toledo Bend Reservoir in Sabine Parish, Louisiana. The White, Sr.'s built a house on Lot 199 and partly on another portion of the overall parcel and in conjunction with that construction, a water line, electric line, and cable television line were connected to the residence. These lines originate on Lot 30 of Whispering Pines Subdivision and run across the subdivision property and part of another portion and terminated at the residence on Lot 199. The meter for the water lines was located on Lot 30. Thereafter, White Sr. sold a partial tract including the house on Lot 199 to Comby and another tract including Lot 30 and other parcels to White, Jr. The water meter billing was changed from White, Sr. to Comby after they purchased the property including Lot 199, even though the meter remained on Lot 30. The water

2

line at issue in this case traversed the driveway of White, Jr. and continued use of the dirt driveway eventually resulted in a breakage of the line. The White, Jr's. turned off the water at the meter and notified the Combys of the break. White, Jr. refused to allow the Comby's to repair the lines, requiring Comby to totally relocate the water lines to their property at significant expense. Suit followed.

A panel of this court in *Comby* agreed with the trial court that there existed an apparent servitude under the facts of the case, relying on *Fuller v. Washington*, 19 So.2d 730 (La.App. 2 Cir.1944), wherein the court found that a sewer line running across property constituted an apparent servitude, and *Nash v. Whitten*, 326 So.2d 856 (La.1976), which primarily discussed prior circuit court cases finding that these courts had improperly applied the test to determine whether a servitude was "continuous" or "discontinuous" while recognizing in that case that the "apparent" nature of the servitude was not disputed. At the time, Louisiana Civil Code of 1870 art. 767 required that for title by destination of owner a servitude be "continuous" and "apparent." *Bertrand v. Halley*, 460 So.2d 705 (La.App. 3 Cir.1984). This "continuous" nature of the servitude no longer is applicable, however, as current Louisiana Civil Code art. 741 requires only that the servitude be "apparent." Accordingly, the court in *Comby* held that the water, electric and cable lines across White, Jr.'s property constituted an apparent servitude. The specific reasons for that determination are not discussed. There was no specific reliance by this court on the mere existence of the water meter on the White, Jr.'s property servicing the lines to the Comby property on Lot 199. It is obvious from the facts in the *Comby* decision, however, that that it was known to the parties that the meter on the White, Jr. property serviced the Comby property as the billing setup for the meter had been transferred into the Comby's name after they purchased the property from White, Sr. It is also clear from a reading of the opinion that the existence of the water lines became obvious, and visible even to White, Jr., as they were exposed under the driveway and cut, as White, J. notified Comby when this was done. It is also obvious that electric and cable lines were also involved, though it is unclear if these lines were visible, emanating from Lot 30 to Lot 199 or also buried underground, though given the time period involved it is most likely these were overhead lines and thus were visible and clearly apparent. Thus, *Comby* does not support a conclusion that the mere existence of a water meter on one parcel, without more, is a visible sign of a water line servitude running underground servicing property hundreds of yards away. *Id.* at 96.

The majority and the trial court here also rely on *Wagner*, although in that case, another panel of this court found that under the facts presented there the pipes supplying water to the condominiums on the plaintiff's estate constituted a nonapparent, rather than an apparent, servitude and did not burden the defendant's estate though the entire property was commonly owned by another at one time. There, the court stated as follows:

> No evidence was admitted establishing that the pipes could be perceived by any exterior works, such as a meter. Lee Musick, the general manager of Hodges Gardens, testified that there were no individual meters on the water lines leading from the resort to the condominiums. Rather, he stated that the resort's water meter was located across Highway 171 on Hodges Garden's property approximately one mile from the resort's water tank.

*Id.* at 517.

3

Clearly, the statement by the court in *Wagner* concerning the meter was pure dicta. The language does not stand for the proposition that the mere existence of a water meter is a visible work or sign such that the non-apparent servitude becomes an apparent one. Indeed, it only suggests that a joint water meter servicing many condominiums located far away from the served property is not a visible sign. That being the case, it supports the conclusion that Guillory's meter here was also not a visible work or sign of the hidden water lines in this case as well.

The conclusion that the water meter in this case, without more, is a visible sign of hidden water lines under the property servicing an estate hundreds of yards away is fiction. There was no evidence that the existence of the lines should have triggered defendant to know the meter serviced any water line other than his own. Had the meter been close to the adjacent property, such as on or near the boundary, it may have. That is not the case here. Had there been some marking or labeling on the meter indicating that it serviced more than one property, it may have. That was not the case here. The only evidence was that there was a meter 1100 feet away, on another property on another street. Under these facts, the court erred in concluding that this was a visible sign of the hidden lines serving plaintiff's estate.

The precedent set by this rational is extremely onerous. Any prospective property purchaser must now question prior to any purchase whether a servitude exists by the mere presence of any water meter, even when it supplies the subject property. It matters not whether there is any other property adjacent or in close proximity to the land proposed for purchase, as hidden lines may service property miles away. The ruling will simply be another reason for "caveat emptor" or buyer beware! The cost to the servient estate is significant, in the form of decreased valuation of the property by having the burden of the servitude, by the burden of decreased potential use as any particular development may be excluded because of the existence of the buried lines, and the inconvenience costs of periodic maintenance of the buried lines.

For these reasons, I respectfully dissent.

4